## ST. LOUIS-SAN FRANCISCO RY. CO. v. KING, Adm'r.

No. 11669—Opinion Filed Jan. 15, 1924.

1. **Railroads — Causes of Action Arising Prior to Government Control — Party Defendant.**

Under section 10 of the Federal Control Act, if the cause of action arose prior to government control, suits might be instituted or continued to judgment against the owner company as though there had been no taking over by the government, save for the immunity of the physical property from levy and the power of the President to regulate suits in the public interest.

2. **Same—Action not Involving Transportation.**

This case was instituted after the proclamation of the President taking over the railroads, but involved the title to certain town lots which were in no way connected with the operation of the transportation company. Held, that the trial court did not err in overruling the motion of the defendant railroad company asking that the Director General be made defendant and the case dismissed as to the railroad company.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Cherokee County; E. B. Arnold, Judge.

Action by Hal C. King, administrator of the estate of A. L. King, deceased, against the St. Louis-San Francisco Railway Company. Plaintiff seeks to enjoin the defendant from trespassing upon certain town lots alleged to have belonged to plaintiff. Judgment for plaintiff, and defendant appeals Affirmed.

W. F. Evans, Kleinschmidt & Franklin, and Adelbert Brown, for plaintiff in error.

J. I. Coursey and J. Berry King, for defendant in error.

Opinion by MAXEY, C. This suit was instituted by Hal C. King, administrator of the estate of A. L. King, deceased, herein-after called plaintiff, against the St. Louis-San Francisco Railway Company, hereinafter called defendant, wherein the plaintiff sought to enjoin the defendant from trespassing on certain town lots in the town of Hulbert, Cherokee county, Okla. A temporary restraining order was granted by the court on presentation of the petition on the 1st day of April, 1918. The defendant filed a motion to substitute the Director General of Railways as party defendant and dismiss said action against said railway company on the ground that the properties of the defendant railway company were being operated and controlled by the Director General. This motion was overruled, and the defendant answered, and set up in its answer the same question in the following language:

"For further answer, said defendant avers that all of its property of every kind and nature has been in the possession and under the control of the Director General of Railroads since the 31st day of December, 1917, and that the same is now in the possession and under the control of Walker D. Hines, Director General of Railroads by appointment of the President of the United States, and said defendant prays the court that an order be made making the said Walker D. Hines, Director General, a party defendant in said cause."

The case was afterwards tried on its merits, and the court found for the plaintiff, and made the temporary restraining order perpetual. The controversy was over the title to certain town lots in the town of Hulbert. The plaintiff introduced in evidence a deed from the Hulbert Townsite Company covering the lots in question, and the defendant introduced in evidence a deed signed by R. F. King, Walsie King, and Ceaf Parker, and Mrs. Eva Parker dated the 15th day of October, 1906, which was made to the Ozark & Cherokee Central Railway Company. The Ozark & Cherokee Central Railway Company was the construction company that built said railroad, and this deed covered other lands and was executed for right of way purposes. The case was tried on the 24th day of February, 1920, before the court, and after the hearing of the evidence and the argument of counsel the court entered judgment in favor of the plaintiff, declaring plaintiff to be the owner of the lots in controversy and enjoining said railway company from trespassing, or in any way interfering with, the plaintiff in the peaceable possession of said lots. The principal point of contention in this case is whether the court erred in refusing to make the Director General defendant and dismiss the case as to the railway company. It will be noted that the suit was brought

on the 1st day of April, 1918; that the first proclamation of the President taking over the control of said railways was issued on December 28, 1917. It is a matter of history that attorneys and litigants were "up in the air" as to just what proceeding should be had in such cases until after the promulgation of Order No. 50, which laid down the procedure in pending cases and suits thereafter brought. It is the contention of the plaintiff that the Director General never had any control of these lots, and that the suit was properly brought against the railway company. Section 10 of the Federal Control Act is as follows:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government. * * * But no process, mesne or final, shall be levied against any property under such federal control."

In the case of Missouri-Pacific Railway Co. v. Ault, 256 U. S., page 554, Mr. Justice Brandeis, after quoting the section, says:

"The plain purpose of the above provision was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the railroads were taken over by the President except in so far as such rights or remedies might interfere with the needs of federal operation. The provision applies equally to cases where suits against the carrier companies were pending in the courts on December 28, 1917; to cases where the cause of action arose before that date and the suit against the company was filed after it; and to cases where both causes of action and suit had arisen or might arise during federal operation. The government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each transportation system. Operation was to be continued as theretofore with the old personnel, subject to change by executive order. The courts were to go on entertaining suits and entering judgments under existing laws, but the property in the hands of the President for war purposes was not to be disturbed. With that exception the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control.

"This purpose Congress accomplished by providing that 'carriers while under federal control' should remain subject to all then existing laws and liabilities and that they might sue and be sued as theretofore. Here the term 'carriers' was used as it is understood in common speech; meaning the transportation systems as distinguished from the corporations owning or operating them."

It will be noted from the quotation from Justice Brandeis' opinion that the federal control was not to interfere with the rights and remedies against common carriers which existed at the time the railroads were taken over by the President, except in so far as such rights and remedies might interfere with the need of federal operation. That, in our judgment, is the gist of this case. In other words, Did the injunction in this case interfere with the needs of federal operation of the railroad? There is nothing in the evidence to show that these lots were necessary to the operation of the railroad. It was a matter purely to determine the title to the lots in question, which were entirely separate from the railroad, and in no manner interfered with the operation of the road. No attempt, so far as the record shows, was made by the Director General to take possession of these lots. The presumption is that he had no use for them in operating the road, and this case comes clearly within that class of cases that are excepted from the federal control statute and left just as they would have been if no federal control had occurred. It was a matter that the Director General had no interest in, and was clearly a matter solely between the railroad company and the owner of the lots, and we are inclined to the view that the court was right in refusing to dismiss as to the railroad company or make the Director General a party.

It is suggested by counsel for plaintiff in error that the case should be reversed and remanded, with direction to modify the permanent injunction so as to make it expire on the date the railroads were turned back to their owners. We can see no good purpose that this would serve. If that is the only purpose that a reversal of this case would serve, we had better say that the question has become moot and dismiss the appeal.

After a careful review of the testimony and the briefs of respective counsel, we are of the opinion that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.